at all. Arguments not to exceed 15 minutes per side. And Mr. Beck, for the appellant, you may proceed. Thank you. May it please the court, Mr. Engler, Your Honor, I would like to reserve two minutes for rebuttal. You may. This case involves a claim of retaliation against the  plaintiff based upon infringement of the plaintiff's alleged First Amendment rights. But the case becomes a little complicated, and it's not novel to this court, but certainly it's complicated because there are inner working issues of defamation and qualified immunity. I mean, the amended complaint suggests that the plaintiffs engaged in free speech pursuant to the First Amendment by being able to freely criticize the Board of Health, and in  plaintiffs' two clients, Dr. Enyeart and Mr. Miglosi. We filed and raised issues of qualified immunity in response to that based upon the issue that the conduct of the plaintiffs in this case may not be, in fact, protected speech. As we look at the evolution of First Amendment retaliation law, of course, we study, and this court has written on this issue, that first we must decide whether or not there is protected activity in the first place. Then we look at whether or not there's been any adverse action. And then we see if there's a linkage between this adverse action and the actual protected activity. In terms of qualified immunity, of course, qualified immunity approaches the very first prong, and it asks the question, was there a violation of a constitutional right? And was that right then clearly established? And our position is, and what we've advocated, is that even though we recognize that the First Amendment provides wide latitude for political comment, in fact, sometimes invisive comment, that right is not unlimited. That there should, in fact, be and there is restraint on some types of speech, particularly as in this case when it is documented that not only was the speech defamatory. Was all of the speech defamatory? No. Or was there some that was just critical of the way the Board of Health and your clients were operating? There was mixed speech. Certainly the open criticism of how the board was trying to use their funds, maybe even the manner in which Dr. Enyard worked his hours would certainly all be fair game under the First Amendment. We respect that. But the instant that the appellees ventured into what would be clearly defamatory, facially defamatory comments, the fact that there was corruption, the fact that they were doing bidding for their friends, all of those things that are documented by the district court and the record, certainly raise the issue of whether that speech itself is protected. And that really is the issue that was addressed by the cease and desist letter in the sense that what was articulated by separate counsel for my clients was that you can criticize us all you want, but what you have said with respect to why these mechanisms are in place is not true and here's why. And the record establishes that the appellees actually knew the truth. I mean if we step back a little bit historically in the record, what happened here was is that Trumbull County has some deplorable soil conditions and were subject to litigation by the EPA that started back in 2002 and 2004. A consent order was ultimately entered into in 2006 and amended in 2008 which basically forced the health department to regulate new septic systems. And those systems had to fall within a certain scientific category which would be sufficient to handle the effluent through sand filters. And as I understand it, these sand filters are cumbersome and they're unsightly and so in order to market as an installer, you have to either offer a sand filter or there has to be an alternative. The only alternatives available had been developed by this company called Consolidated Systems and for reasons that are unique to the appellees, they got into a firefight with that company. And in fact, there was a cease and desist letter that's in the record that was sent in February of 2012 by Consolidated asking the appellees to stop defaming their company. But as a result of that, the only distributor of these alternative systems refused to deal with the appellee. Now we had no input in that, we had no control over that. The reason that that's relevant is because the plaintiff and the appellees tried to develop their own tertiary system which was rejected not by the health department, but by the Ohio EPA's engineers. And that information was conveyed to the plaintiff. But yet, throughout 2011 and 2012, they continued to argue, continued to assert that there was corruption, bid rigging. Why isn't all that you're telling us showing us that there's a fact question as to whether some of the comments of the plaintiffs were defamatory? But I guess I'm getting a little bit lost in terms of if there's a fact question, normally denying qualified immunity is the appropriate route to go. And I agree that that becomes a confusing issue, but I think at that point we look at what we've all recognized as the definition of defamation. Defamation itself is not, in its clinical analysis, is not based upon the status of the supposed victim. In other words, there's been, of course, the carve-out and proper analysis by the United States Supreme Court as to whether or not you're a private citizen or a public figure or a public official. But if we look at defamation itself, a facial defamation claim is a false statement made against someone that's published that's unauthorized. Is everything you've told us so far going only to the alleged retaliation of the cease and desist letter? Yes. And the way you're arguing it, it sounds like you're saying that if they were factually wrong to ask their lawyer to send the letter, then they would lose. Are you required to, I mean, is it your position that the only way you can win is for that letter to be a winning one? No. I think that the letter itself, what we disagree with with the district court is that that in itself was evidence of adverse action. I think that, you know, because I ask myself the rhetorical question of what is the remedy available to a public official who is subjected to what they believe to be facially defamatory comments. Their remedy or their ability to rebut that can only exist in a forum where you either announce publicly that this is wrong, which was done, or you go directly to the publisher and say this is wrong and this is why. And I think that that is really why, you know, on our position, if the court would, for instance, make this determination that the speech of the plaintiff was either protected speech or there's an issue of fact as to whether or not it's protected speech, then we drop down to, even if that were the case, was there adverse action taken? Are you conceding that that letter is state action? I'm conceding that it is an action by my clients to exercise their own First Amendment rights. That's not conceding that it's state action. State action? It sounds like you're asserting that it's private action that would be otherwise permissible. That's right. That's what I'm trying to figure out where you're coming from. Yeah, I'm suggesting that as a citizen subjected to defamation, they were asserting their private rights to say this is wrong and here is why. And, you know, that letter actually gives us a roadmap in the sense that, you know, for the plaintiff's argument to have, you know, steam, they eventually have to establish that there's a linkage between this claim of retaliation and the ultimate adverse action, which the district court identified as the cease and desist letter, which, of course, were challenging, and then the administrative process, which was in an effort to revoke his registration. Let's talk about the administrative process because that seems a little more conventional in terms of our other cases. It does. I agree with you that, you know, as we all know, the adverse action arose out of employment law, and this would certainly be a situation where if there was proof that there was a linkage between these things, there would be an articulable allegation of adverse action by denying this man the ability to pull a permit. I don't challenge that piece. But what I do challenge is the district court's determination even on the facts. I mean, there are affidavits from Dr. Enyart and Mr. McLosey, but in particular Dr. Enyart, that clearly establish without challenge that this was not a unique situation for the health department to challenge the validity of a septic installer's registration. There were at least 15 efforts by the health district over a 10-year period in which they did, in fact, conduct administrative proceedings, and they did. Are these your exhibits, A1 through A18 or so? Yes, sir. I mean, they seem to be different people at different times, but I was able to match up most of them with your briefs. Is that pretty much what you rely on? That is it, Your Honor. And then there is the issue with respect to the activity that occurred with the performance issues. I mean, there were a slew of performance issues that dovetail with this whole issue. So you're correct, I challenge the district court's decision that the finding of adverse action is buttressed and based upon the fact that no one has had their registration challenged before. I don't think that's accurate, even in the record. In fact, it's completely the opposite. But two, this was based on performance issues. As this evolution of discourse was ongoing, as I mentioned, the appellees were frustrated because they couldn't get their own product approved and they had gone sideways with consolidated systems and couldn't even obtain that product. But they somehow put their anger up against my clients and asserted that they couldn't market their own product. So we believe, and we think the record demonstrates, that it was the performance issue of Mr. Meadows and his companies that resulted in this, and it would have happened anyway. Wasn't there commentary that your opponents pointed to that would suggest that it could have been a retaliatory motive as opposed to a performance motive? So Migliosi's telling Berry that I'm tired of you always stirring up shit and Enyart saying Berry Meadows is not finished and neither am I and that if you view that evidence in the light favoring the plaintiffs that there is at least a question of fact that's appropriate for a jury to decide. Well, if we look at the context of those statements, of course, they're separated in time. But more important, Mr. Migliosi, as the environmental director, is not the entity or the person that makes an election to challenge the validity or the application or continued status of anyone's registration. That's the Board of Health. Mr. Migliosi could make some argument or suggestion, but that's a Board of Health decision, so he didn't even have the power to initiate the claim. That's done at the Board of Health level. I also think that these comments could be deemed as saber-rattling or threats that I think this Court has already recognized may not in and of themselves be sufficient to create adverse action. Just the suggestion that I don't like you, the suggestion that I'm tired of your activity is not in my view of even this Court's writings that that would be deemed adverse action. We also need to pay attention to the fact, and it is in the record, that this just wasn't a situation where we thought he was not. We received, and again, unchallenged in the record, a stream of complaints about him, but the most important ones dealt with the analysis that was done by the Ohio Department of Health. There was a series of failing septic systems in this area over a 12-month period, and of those systems, the majority fell with Mr. Meadows and the appellees' company. The problem was that the analysis done independently showed that most of every one of these failures dealt with installer error. On top of that, we had complaints that are in the record from residents who had hired the appellee who didn't even finish the job, and the work that he did was inappropriate, and that resulted, of course, in these two prosecutions that were ultimately dismissed, but there was probable cause for those investigations and ultimately the warrants. But my point is that there was a series of problems that went on for a number of months that would have still... Counsel, if you want to save your two minutes for... I will, Your Honor. Thank you. Thank you. Honorable Court, Mr. Beck, may it please the Court, Attorney David Engler on behalf of Deanna and Barry Meadows, the appellees in this action. Just a small bit about the facts. It's a young couple who had a business. Their business was to install septic systems, and the name of the business is Digging Dirt. So they have this system in Trumbull County in particular, but in other adjacent counties in Northeast Ohio that had these terrible soil conditions, but there was only one product that was suitable or deemed suitable in the marketplace. So like any business person, Barry and Deanna Meadows say, we can build a better mousetrap, and they go about creating a system that looks better because the septic system wasn't sticking above ground like a concrete bunker, but it was actually below the ground, and it would cost less and do as good or better of a job than the existing system that was being distributed. The consent decree had given the authority to the Trumbull County Health Department to actually make a determination as to if this system was going to be approved or not. Counsel, if I could interrupt you. Yes, Your Honor. Because where it sounds like you're going is a conventional type of regulatory fuss that could happen with horses or real estate or anything. You have a regulatory agency has a fuss with somebody who's being regulated, and my question is, we've got two issues here. We've got the cease and desist letter. My question on that is, that's a private action. How is that state action? If they had asked the man to pay a debt or to pay his rent, if they happened to be his landlord, how can that be the kind of state action that would constitute First Amendment retaliation? You want to go there to start with? Certainly, Your Honor. And in addressing that issue directly, you have that cease and desist letter in the context of all the other retaliatory actions that James Enyard and Frank Migliosi are taking on behalf of the Trumbull County Health Board because the Meadows are making these postings on Facebook, and the Facebook postings are what causes Enyard and Migliosi to become so upset at the Meadows. I understand that. And so that letter is not factually. It may be a state action. It may be a private action. That determination as to what is fact and what is legal, the proper jurisdiction of this court is just purely one of a legal inquiry as to whether qualified immunity was proper or improper in this case.  or that counsel for appellant was mentioning are not germane to this interlocutory appeal. The issue of whether that letter in and of itself, if that's a state action versus a private action, you still have it matters not, I'm suggesting. Are you saying that if it's a private action, you can still bring a First Amendment retaliation? Oh, there were certainly other actions that were taken, the threatening comments, this entire administrative proceeding that took place. Counsel, every time I ask you the question, you answer about something else. I'm going back to saying specifically, let's take the analogy that your man is his tenant and he sends a letter, says, pay your rent. And can that support a constitutional violation of his First Amendment rights when he's acting clearly in a wholly private capacity? Your Honor, that... That would seem to be a matter of law, wouldn't it? As stated by you, that could not support a retaliatory action if it was a purely private action taken by someone to say, you owe me rent. But that, in this case, wasn't what happened. You had the Director of Health and the Environmental Director taking action saying, don't you say anything to us when you come to these board meetings, Deanna and Barry Meadows. We don't want to hear from you. And if you do, we will sue you. So the action that they were taking, there wasn't any separate relationship between Migliosi and Ennard. The question is that if it has something to do... You know, we have these people, sometimes we've just issued a case about intercepting phone calls, or there are cases about people making unauthorized video. So if a public official thinks that someone has committed a tort against them, they can be sued if they demand that people stop it? In other words, I think you've committed a tort against me. It happens I'm a public official. Your tort may have something to do with my public actions, but I can be committing a constitutional violation by trying to vindicate my private tort rights? I believe it's both a question of fact and law, as you're stating it, Your Honor, because you can clearly say something that you should be able to protect. Say, look, you just defamed me, or you harmed me and caused a tort against me. I want to take action to protect that interest that I have. If that existed on its own in this case, I agree, Your Honor, in terms of what the court is suggesting. But when you take the actual, and just viewing the cease and desist letter in and of itself, forgetting the fact that there were many other retaliatory actions that were taken against the Meadows in this case, but that action cannot be viewed separately, because what I think the appellants are saying is that you're giving public officials, and particularly New York Times v. Sullivan, is it has to be both defamatory and with malice, false and with malice. So I don't think the law is intended to give a public official who's sitting in their capacity to say, look, I think you're defaming me because you're saying something that causes me to feel as if I've been damaged, because what you're saying to me, Meadows, is you're saying things to me in my official capacity that I'm corrupt, that I hide my hours, that I'm in cahoots with the manufacturer of the other product that's out there. There's no way to do that, Your Honor, without shilling the free speech. If you're going to sit in that seat of being the health commissioner... That part, because I asked the same question on the other side. You're saying that you could send that letter but only if you're correct, only if it's a winning letter. If it's not a winning letter, then you've committed a constitutional tort. Your Honor, I agree. I think you have to be very... And that's interesting, because I've been on this case as the sort of ground lawyer all the way up to this point in time. I think it was just a critical error that they made at the time. You have to take a look at, when you're the lawyer, when you're crafting that letter, who is my client, what position do they hold, what am I actually saying? Am I shilling something? Am I shilling something that I know is wrong or might be wrong? You're a public official. You better have some pretty tough skin. And I think sending out the cease-and-desist letter telling a small business couple that we're going to sue you in the midst of already taking your administrative permit... Let's talk about the other actions, because a lot of your answer was to put it in the context. And my question here is, again, you have a pretty conventional fuss between a regulator and a regulated entity. The person being regulated never likes having anything done to them. The regulator, when pressed, says, look, I'm doing all this stuff to other people. Is that always going to be a question of fact, or how do we decide where the line is between... I mean, every taxpayer, when the IRS comes after them, says, hey, look at this other guy, you didn't get him. So how do we draw that line? Well, as Judge Pearson drew the line, Judge Pearson made the determination that this was all a matter of fact to be determined by the jury, ultimately, in this case. And that, I believe, is the issue of qualified immunity as to whether this was the determination, one, purely legal. And I think what appellants are saying, they're talking about facts. They want to talk about the facts in this case. But the reality is, if you have the person who's the taxpayer and the IRS says, I don't like the IRS because I'm paying too much in taxes, and the IRS does nothing, or if the IRS starts to conduct audits of charitable organizations and says that those charitable organizations are now... You then cause this individual taxpayer who's been making public comments about the IRS to have a cause of action because if they can articulate, the plaintiff, if they can articulate a set of facts that this action is retaliatory by the IRS because the IRS selectively prosecuted them with audits because they were an exempt 501c3 that otherwise should... I'm not sure where you're going with there. The counterside is that I'm using an abusive tax shelter and here's 47 other guys that did the same thing and they were all audited. So how do we... where do we make that line? And I think... Because here it does appear that there's indications that they held hearings on a bunch of other people over time. That's those Exhibits A, 1 through 18 or so. That's if you're looking at the facts as presented by the defendant as opposed to the standard and the qualified immunity determination as the facts in a light most favorable to the plaintiff. What is your best fact or facts that would show that this is retaliatory? That administrative hearing, Your Honor, was just a pure scam of an administrative hearing. Everything the Appellants' Counsel just said was disproven at that administrative hearing. The Meadows go through this... It was like a four-day administrative hearing where he becomes the first person to have his permit withdrawn to install septic systems in Trumbull County. And they hold this very long administrative hearing. At the end of this administrative hearing, when myself as the lawyer start to question the Board of Health, the people who allegedly the Board of Health gathered up to make complaints about the Meadows, they literally dismiss the proceeding and say, we're not going to let you go forward with this dog-and-pony show because we don't want to go any further. And they literally stop the administrative proceeding. The hearing officer that they actually hire writes a scathing response in his administrative hearing decision to say, that in and of itself was a violation of my client's due process because they had a right to say, look, I need my permit. But what they do is they create this process. They hold his permit back from him. Then they make him go through this administrative hearing. They don't even let him put on his case before they decide to adjourn, take no more evidence, and then dismiss the action without anything further going on. And then causing the administrative... If you dismiss the action, I was a little puzzled by that. I mean, normally in a lawsuit, if you dismiss the action, that's it. There's no decision. There's no nothing. Here they quit presenting evidence after some time, but then the officer did write an opinion. So is there something that is different from a normal voluntary dismissal? I'm sorry, Your Honor, I misspoke. It wasn't a dismissal. They just shut the hearing down because their position... What do you mean shut the hearing down? That is, if you walk out of here and say, I don't want to talk anymore, you haven't shut the hearing down. We'll go ahead and decide the case. So what did they do that you call shutting the hearing down? Well, specifically myself on behalf of the Meadows, I then had a series of witnesses that I wanted to present evidence in this administrative hearing as to how their process was selective, it was arbitrary, it was unreasonable. And so I bring all these witnesses for the administrative hearing. They don't allow me to put forth my witnesses or even put on Barry Meadows and Deanna Meadows at that point in time of the hearing. They say we're not going to take any further evidence regarding the decision not to give Barry Meadows a permit. So they don't... So then what happened after that? Well, and I'm going ballistic. I'm saying you have to give us our day in court, so our day in this administrative proceeding. And I'm arguing to the administrative hearing officer that I need the chance to present my client's side of the story. He said, look, and this is in the record, they run the hearing, they being the Trumbull County Health Department, runs the hearing. They're going to make the determination of what they want this hearing to look like, what evidence they're going to take. If they've made the determination that the hearing is finished at this point in time, and they don't want you to cross-examine Dr. Enyart, I had him on the stand, I had the people from the State Department of Health, I had all these people listed, and they literally just stop and say no more testimony. But then is there a resolution? Yeah, the hearing officer makes a decision, Your Honor, and he really blisters the health department. His decision is in favor of you? Yes, yes. And he goes on at length to talk about how the Meadows weren't given... All the violations they alleged that the appellant's counsel just talked about, none of them were proven. Counsel, when we talk about factual matters, I want to take you back to that A-1-18. Are you saying those don't exist or they're illegal? Did you submit something that said that those things are not factual? Yes, Your Honor, in that administrative hearing. We had in the administrative... MIMO and all these other folks. That's in the record before the district court, and when we're asking about did they do things to anybody else, I wouldn't think that you did that in the hearing before the... But maybe I'm wrong. Tell me, is there something... Because you kept saying below, at least, they never did anything to anybody. They submit papers that unless they forged them seem to say to the contrary. Did I miss anything that you raised a genuine issue of fact as to the genuineness of those previous hearings? Yes, Your Honor. I believe we entered into evidence the hearing officer's decision in that administrative hearing case. So the administrative hearing... Did that decision say they never had any other hearings? Yes. It did? Yes. That hearing goes over the fact. But I still want to say, Your Honor, despite that... If I read the hearing officer's decision, I'll find something that says that Exhibits A1 through 18 are all forgeries. They don't exist. It didn't happen. Not that they're forgeries, Your Honor. That they didn't happen? They didn't prove the existence of these allegations. These allegations being? That whole laundry list of allegations. They had ever had any hearings? Correct. If you read the hearing officer's decision, the hearing officer states in his decision that those allegations made against Barry Meadows on his... No, but that's not an allegation about these other people. What you're saying is that they didn't prove their allegations against Mr. Meadows. I'm asking, did they actually have hearings for anybody else? Because below you asserted, and Judge Pearson agreed with you, or stated it, that they never happened. And the hearing officer didn't talk about that, did they? He may have, Your Honor. I quite honestly... I'll read it then. I don't recall, Your Honor. Your time's up unless my colleagues have questions. Thank you. Thank you, counsel. May it please the court. My colleague challenged whether or not even these discussions should be entertained in qualified immunity, and this goes to the issue of a clearly established right, whether there was, in fact, any adverse action. With respect to the record, the administrative proceeding is not in the record, although I do agree that the administrative decision was in the record. But what we have submitted through the affidavit of Dr. Enyart is his statement as to why that hearing was closed off. Despite what my colleague has said, these previous 15 things were usually administrative routine matters. In this particular case, my colleague protracted these hearings, and I wasn't there, so I'm just telling you what's in the affidavit, to the point that the health department just decided it had to just abandon this because it was taking too much time and too much effort. The notion that Mr. Meadows' registration was revoked is not true. His registration existed, and these had to be annually renewed at the end of the year. So in fiscal year 2012, while this proceeding was going on, his registration was active. The issue was, could they revoke it through this administrative process? Ultimately, after three full days of hearings, knowing that this was going to go on for weeks, according to my colleague, they just said, well, we'll just stop. The administrative proceeding essentially resulted in a finding for Mr. Meadows. The license was re-administered to him. In other words, his application was approved for the fiscal year 2013, although it wasn't approved until April, and that had to do with the consistency and constituency of the Board of Health. Okay, so in his affidavit, in Meadows' affidavit, he says, I know of no other septic system installer who was subjected to an administrative hearing by Dr. Enyart and Meg Liozzi in order to have his or her septic system installer permit renewed. So why does that not establish a fact question? Because in the record, we actually submitted through the affidavit of Dr. Enyart the official public records. I mean, these are public records. They're not just things that we created off our system. These are public records that completely refute that. Of others who were subjected to an administrative hearing. Yes, Your Honor. These were administrative proceedings. So the plaintiff is saying, I know of no others. You submit affidavits that establish that there were others. That's your position. That's why you're arguing there's no issue of fact here. Yes, Your Honor. I have one question for you, and it goes to the issue that Judge Boggs was raising earlier about the cease and desist letter, whether that constitutes state action. And if it doesn't, does it make a difference? Can't that letter be reviewed for motivation on this issue of retaliation, regardless of whether it constitutes state action? Well, I think it can. And that's why I think when you actually read the letter itself and see how it's articulated, the lawyer that drafted it was very point specific. That it addresses just some of the allegations and not the overarching. Yes. The statement basically says we just want you to stop and cease and desist these defamatory comments, and here's why. It didn't say take down your blog, take down your Facebook. It didn't say you can't come to our meetings. It just said stop this stuff that we are showing you are false and defamatory. Thank you, Your Honor. Okay, thank you. Case will be submitted. The clerk may call the next case.